Jeffrey A. Cogan, Esq.
JEFFREY A. COGAN, ESQ., LTD.
Nevada Bar No. 4569
6900 Westcliff Drive, Suite 602
Las Vegas, Nevada  89145
Telephone No.: (702) 474-4220
Facsimile No.:  (702) 474-4228
Email: jeffrey@jeffreycogan.com
Attorney for Plaintiff Socrates Roussous

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In Re: | ) | Case No.:   BK-S-14-14318-ABL |
| | ) | Chapter 7 |
| SOCRATES J. ROUSSOS, | ) | |
| | ) | Date of Hearing: |
| Chapter 7 Debtor. | ) | Time of Hearing: |
| | ) | |

## **OPPOSITION TO TERRI GILMORE'S OBJECTION TO EXEMPTION**

COME NOW, Plaintiff Socrates Roussos, by through his attorney, Jeffrey A. Cogan, Esq., Ltd., and hereby Opposes Terri Gilmore's Objection to Exemption.   This Opposition is made and based upon the following Points and authorities and the argument of counsel at the hearing on the matter.

DATED this 10th day of September, 2014.

        JEFFREY A. COGAN, ESQ., LTD.

By     /s/ Jeffrey A. Cogan, Esq.
      Jeffrey A. Cogan, Esq.
      Nevada Bar No. 4569
      6900 Westcliff Drive, Suite 602
      Las Vegas, Nevada 89145
      Telephone: (702) 474-4220
      Facsimile: (702) 474-4228
      E-mail: jeffrey@jeffreycogan.com
      Attorney for Socrates Roussos

**POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

On March 20, 2003, the parties, Movant Terri Gilmore and Debtor Socrates Roussos, purchased 5201 South Torrey Pines Drive, unit #1273, Las Vegas, Nevada (hereinafter "unit #1273") and financed by a note secured by a deed of trust which was executed by each party. The Deed of Trust states that the amount financed is $104,000, and the Note becomes due on April 1, 2018. *See* Exhibit "A" Deed of Trust recorded as document 2003040702257. The amortization table of that would produce a balance of $37,367.97 as of June 23, 2014, the date Mr. Roussos filed his Chapter 7 Petition.

On February 22, 2006, received a Decree of Divorce, which awarded Mr. Roussos, among other things, the properties at 5201 South Torrey Pines Drive, unit #1297 Las Vegas, Nevada (hereinafter "unit #1297") and. *See* Exhibit "B" Decree of Divorce, Eighth Judicial District Court, Case No. D331344, page 10, First Page of Memorandum of Understanding. The Decree also stated that if any action is brought against the party not awarded the encumbered property, the responsible party was required to defend the other party and hold that party harmless. *See id.*, page 7, lines 23-28, page 8, line 1. Finally, the Decree required that Mr. Roussos pay $75,000 to Ms. Gilmore as an equalization payment resulting from the difference in value each party to the divorce received. Mr. Roussos made the payment.

On March 23, 2007, Movant Terri Gilmore received a Default Judgment against Debtor Socrates Roussos in the sum of $55,125.00, including pre-judgment interest. *See* Exhibt "C", Default Judgment, Eighth Judicial District Court Case No. A524879. Mr. Roussos paid the Judgment amount on March 23, 2007. *See* Exhibit "D", Order to Enter Amended Default Judgment

and to Expunge Lis Pendens, Eighth Judicial District Court Case No. A524879. At that time, Mr. Roussos was told by his counsel that his obligations to Ms. Gilmore were satisfied and that he would have no other legal or financial obligations towards her.

On July 13, 2007, Mr. Roussos took a loan on unit #1273. *See* Exhibit "E", Deed of Trust recorded as Document 20070716000472. Mr. Roussos does not have the records that show what he did with the proceeds of the money received over seven years ago but recalled paying some of the money to his mother, who lent him a portion of the money that was used to pay Ms. Gilmore the $75,000 Divorce obligation and the $55,125 Default Judgment obligation. The effect of the loan was to remove Ms. Gilmore obligation on the original purchase money note.

On November 14, 2007, a second Order was entered in that case. The Court expunged Ms. Gilmore's improperly recorded Lis Pendens placed on all three properties. *See id.*, page 2, lines 23-26. As a result, Plaintiff filed filed several motions, over the next two years, in state court alleging that Mr. Roussos misrepresented the value of the 3 properties that he owns, which include unit #1273 and #1297, which were to provide Plaintiff adequate protection in lieu of Defendant providing an appellate supercedas bond.[1] One year after Ms. Roussos received the Amended Judgment, Mr. Roussos filed a Homestead Declaration for unit 1297 on November 19, 2008; the only Homestead that he filed in Clark County.

On September 15, 2009, Terri Gilmore filed her own Petition for Relief and received her Discharge on December 22, 2009. *See* Exhibit "F", Discharge of Debtor, Case No. 09-27182. As a result, any pre-petition debt for attorney's fees that Ms. Gilmore owed to Mr. Lee, her counsel, were discharged.

---

[1] Debtor's has been attempting to get Orders relating to the valuation issue of the properties offered as appellate bond security but has had to order the pleadings and orders from the clerk and has not yet obtained them.

Debtor filed a Chapter 7 Petition on June 23, 2014 and claimed a Homestead Exemption on Schedule C for the property located at 5201 South Torrey Pines, #1297, Las Vegas, Nevada. *See* Petition, page 16 [Dkt. # 1]. The parties agree that the Debtor refinanced 5201 South Torrey Pines, # 1273, Las Vegas, Nevada.

Paragraph 6 of the Objection states that the Debtor consented to a judgment lien on Exempt Property and/or would waive the homestead exemption and the Court accepted Mr. Roussos representation and did not require him to post a supersedeas bond to stay execution. *See* Objection, page 2, lines 24-27. Ms. Gilmore has provided no documentary evidence to support this allegation, such as a filed Stipulation or a Court Order.

## **II.**

## **STATEMENT OF LAW**

**1.    OBJECTIONS UNDER 11 U.S.C. § 522(o) generally.**

Under Federal Rule of Bankruptcy Procedure 4003(c), the objecting party has the burden of proving that an exemption is not properly claimed. Exemptions are to be liberally construed in favor of the debtor who claims the exemption. *See Arrol v. Broach (In re Arrol)*, 170 F.3d 934, 937 (9th Cir. 1999).

### **A. Burdens of proof**

Recently the Ninth Circuit Bankruptcy Appellate Panel explained the burdens of production and persuasion on an exemption objection:

> A claimed exemption is "'presumptively valid.'" *Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 630 (9th Cir. BAP 2010)(citing *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029n. 3 (9th Cir.1999)). "[I]f a party in interest timely objects, 'the objecting party has the burden of proving that the exemptions are not properly claimed.'" *Id.* (quoting Rule 4003(c)). Initially, this means that the objecting party has the burden of production

> and the burden of persuasion. *In re Carter*, 182 F.3d at 1029 n. 3. The objecting party must produce evidence to rebut the presumptively valid exemption. *Id.* Once rebutted, the burden of production then shifts to the debtor to come forward with unequivocal evidence that the exemption is proper. *Id.* The burden of persuasion, however, always remains with the objecting party. *Id.* 483 B.R. at 203.

*Diener v. McBeth (In re Diener)*, 483 B.R. 196 (B.A.P. 9th Cir. 2012). The standard of proof is by a preponderance of the evidence. *See Leavitt v. Alexander (In re Alexander)*, 472 B.R. 815, 821 (B.A.P. 9th Cir. 2012).

### B. Requirements of Section 522(o)

"Section 522( o ) has four essential components. To prevail, a creditor or trustee must show: (a) an increase in the value of the debtor's homestead; (b) that the increase was 'attributable' to the disposition of nonexempt assets; (c) that the disposition of the nonexempt assets was made with the intent to hinder, delay, or defraud a creditor; and (d) that the disposition occurred during the ten-year period ending on the date the debtor's bankruptcy petition was filed." *In re Stanton*, 457 B.R. 80, 91 (Bankr.Nev., 2011).

### 2.  THE OBJECTION SHOULD BE OVERRULED.

Of the four factors in § 522(o), Debtor will stipulate that the fourth factor is met.

### A.  There was no fraudulent intent.

Ms. Gilmore contends that there was fraudulent intent as Mr. Roussos knew that he would be subject to an amendment of the Default Judgment, requiring him to be liable for an additional $95,000 when he reduced the principal on #1297. *See* Objection to Exemption, page 2, lines 12-13 and page 4, lines 16-19. On April 2, 2007, Mr. Roussos paid Ms. Gilmore $55,125.00 and Ms. Gilmore executed a satisfaction of Judgment. Mr. Roussos thought that by paying the Default Judgment in full and receiving the Satisfaction of Judgment, he thought that he was free to encumber any property and direct the proceeds as he saw fit as he was "free" from Mr. Roussos.

One reason, among others, that Mr. Roussos encumbered unit 1273, was to cut his "ties" with Ms. Gilmore, as she was on title with Mr. Roussos when they purchased the property. *See* Exhibit "E" Therefore, there was no fraudulent intent to borrowing the money on unit 1273 as Mr. Roussos thought he had satisfied his obligations with Ms. Gilmore.

### B.   THE BADGES OF FRAUD.

Ms. Gilmore argues that the "badges of fraud" provide the analytical framework to determine whether the requisite intent to hinder, delay or defraud. *See* Objection to Exmeption, page 3, lines 25-28, page 4, lines 1-7. The Eighth Circuit Court of Appeals in *Addison v. Seaver (In re Addison)* stated that just meeting the badges of fraud test is not enough. *In re Addison*, 540 F.3d 805, 814, (8th Cir. 2008). *Addison* discussed that a court must look at more than the "badges of fraud." It wrote, "for fraudulent intent to be found 'there must appear in evidence some facts or circumstances which are extrinisic to the mere facts of conversion of non-exempt assets and which are indicative of such fraudulent purpose." *Id.* at 814.   It concluded:

> Addison did not 'acquire title to a house for no other reason than to defraud creditors' as Sheldon had.   Addison owned his house for years prior to his bankruptcy filing and merely converted nonexempt assets into the homestead to protect it from the reach of creditors – the exact action that we implied was permissible in upoholding the finding of intent to defraud in *Sholdan II.*

*Id.* at 816.   The Eighth Circuit reversed the Bankruptcy Court's holding that Mr. Addison's transfer of $11,500 from non-exempt assets to pay down their mortgage and then, later in the day, file the Chapter 7 Petition.

The "badges of fraud" analysis does not work well in analyzing the intent requirement of § 522(o).   The "badges of fraud" are better used to analyze a fraudulent conveyance to a third person, rather than a transfer of non-exempt assets to exempt assets. Debtor's analysis of the "badges of

fraud" as laid out in Ms. Gilmore's Objection as follows: (*see* Objection, page 3, lines 27-28, page 4 lines 1-6.

1. The objecting creditor had a 'special equity' in the nonexempt property which is converted into exempt property: Ms. Gilmore, in the Decree of Divorce, agreed to give her equity in the Nevada property in exchange for the Florida property that she received and a $75,000 payment by Mr. Roussos;

2. The debtor and the transferee enjoyed a family, friendship, or close relationship:  this factor does not assist in the analysis;

3. The debtor retained possession, benefit, or use of the property in question:  this factor is more properly in a fraudulent conveyance, where a debtor "sells" a house to a friend but still lives in the house;

4. The debtor engaged in a sharp pattern of dealing immediately before the bankruptcy: quite the opposite, in the year prior to the financing of unit #1273, Mr. Roussos paid Ms. Gilmore $130,125;

5. The debtor became involvent as a result of the transfers: again, this is better for a fraudulent conveyance situation.   This debtor was essentially financial the same, just moving equity from unit #1273 to unit #1294;

6. The conversion occurred after the entry of a large judgment against the debtor: while true, Mr. Roussos had paid the large judgment in full prior to the time of conveyance;

7. The debtor received inadequate consideration:   this factor is not applicable to this case.

There are additional "badges of fraud" that were not cited by Ms. Gilmore.   The *Stanton* Court also referenced others.   *See Stanton,* 457 B.R. at 93.

A. The transfer was disclosed:   because the withdrawal of the equity was recorded with the County Recorder, all parties are on constructive notice of loan against unit #1273;

B. The debtor absconded:   not only did the Debtor not abscond, Mr. Roussos announced his precense by recording a Homestead Declaration on a fourteen months after the transfer;

**C. LACK OF INTENT TO DELAY, HINDER OR DEFRAUD**

Debtor's actions show that there was nothing wrong with the transfer.   Mr. Roussos did not delay, hinder or defraud Ms. Gilmore.   She had the remedy of seeking execution upon unit #1297 at

any time, including right after the paydown of the mortgage of unit #1297.   Since there no homestead filed until a year after the Amended Judgment was entered, and case law consistently holds that the filing of a homestead is protected, and thus, the recording of the homestead cannot be a hinderance as a matter of law to Ms. Gilmore.

Ms. Gilmore seeks the completely deny the Debtor his Homestead in its entirety.   This is a remedy that is not available under § 522 (o).   The statute only allows that the Homestead be reduced to the extent that such value is attributable to any portion of the disposed property.   Ms. Gilmore has the burden to trace the money from unit #1273 to #1297, something that the Objection has not done. Ms. Gilmore did not seek an order for a Rule 2004 examination, and instead, is relying upon the conjecture of Mr. Lee stating that Mr. Roussos paid off the balance of the mortgage of unit #1297. A declaration must be made upon personal knowledge and Mr. Lee provides mere general conclusions.

As Mr. Roussos still owns unit #1273, another fact showing a lack of fraud is a retrospective look at unit #1273.   One of the arguments made is that #1273 is devoid of equity and unit #1297 is exempt.   If there was no refinance, the balance on unit #1273 would still be $37,367.   Additionally, the evaporation of equity is also due to the downturn of the Las Vegas real estate market.   Thus, if Mr. Roussos never refinanced the loan on unit #1273, would have approximately $100,000 of equity and not the amount sought by Ms. Gilmore.

Ms. Gilmore was also released of the obligation of the purchase money note of unit #1273. This cut the last financial tie between the parties and provided her with the financial benefits of a better credit score and no worries relating to her liability on the note.

It appears that the grievance of Ms. Gilmore centers around the substitute security in lieu of the supercedas bond when Mr. Roussos appealed the November, 2007 Amended Judgment.   The

State Court was not concerned about Mr. Roussos's actions. In Exhibit "2" to the Objection, the Court ordered, "everything to stay the same." *See* Objection, page 12. Additionally, how can there be fraudulent intent if "At the subsequent hearing Debtor's attorney offered to reinstate a judgment lien against the homestead property and that the 'homestead could be pierced' in the event that the judgment was affirmed. *See* Objection, page 5, lines 4-6. If the Objection centers on the transferring of equity from unit #1273 to unit #1297 and Debtor offered to place unit #1297 in non-exempt status, this is evidence that there was no intent to delay, hinder, or defraud Ms. Gilmore. In effect, over five (5) years ago Debtor offered Ms. Gilmore the very remedy that she is seeking now, and for whatever reason, she never exercised that remedy until the Bankruptcy Petition was filed.

**3.    DOES THE MOVANT HAVE STANDING TO RAISE THIS ISSUE.**

The tenor of the litigation changed when the State Court granted the Order to Enter Amended Default Judgment and to Expunge Lis Pendens filed on November 14, 2007. That order gave Ms. Gilmore a judgment against Mr. Roussos for $70,427.00 in attorney's fees which has accrued an additional $19,191 in interest. The question is: did the discharge of Ms. Gilmore affect the attorney's fees awarded. Presuming Ms. Gilmore did not actually pay to Mr. Lee the $70,427 that she owed to him and is not seeking reimbursement for funds expended, does the Discharge of Ms. Gilmore preclude the collection of the attorney fee award. Debtor's counsel is aware that the Chapter 7 Trustee, after being notified of this Judgment, though not being listed on her schedules, subsequently abandoned the rights under the Amended Judgment back to Ms. Gilmore through a Bankruptcy Court order. Debtor is raising these arguments for purposes of non-waiver and if necessary, seek an appropriate determination by this Court as to this issue.

**4.    DOES THE COURT HAVE THE AUTHORITY TO ENTER THE REQUESTED**

**REMEDY.**

If the requested remedy is a surcharge upon the Debtor's Homestead in the amount of the paydown of the loan on unit #1297, does the Court have the authority to do so. The United States Supreme Court, in the recent case of *Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188 (2014) denied a Chapter 7 Trustee's attempt to surcharge a debtor's homestead to pay administrative fees incurred by the Chapter 7 Trustee as a result of the debtor's actions. After reviewing the Code, including the limitations it states on exemptions, including the limitation of § 522(o), it wrote, "The Code's meticulous – not to say mind-numbing detailed – enumeration of exemptions and exceptions confirms that courts are not authorized to create additional exceptions." 134 S.Ct. at 1196. The Court concluded that the bankruptcy court had neither the statutory authority under § 105, nor the inherent authority to deny an exemption on a ground not specified in § 522. 134 S.Ct. at 1198.

If the Court can reduce the Homestead under § 522(o) but cannot surcharge the Homestead under the *Law v. Siegel* holding, and there is no equity above the Nevada limit of $550,000 under NRS 115.010(2), what order can this Honorable Court make.

## **CONCLUSION**

Whether the Court invokes the "badges of fraud" test or just a looking at the facts under the prism of some facts or circumstances which are extrinisic to the mere facts of conversion of non-exempt assets and which are indicative of such fraudulent purpose, the Objection must be overruled. Debtor, simply put, had reasons other than delay, hinder or defrauding Ms. Gilmore for his actions some seven (7) years ago.

DATED this 10th day of September, 2014

                                              JEFFREY A. COGAN, ESQ., LTD.

                                              By    /s/ Jeffrey A. Cogan
                                                      Jeffrey A. Cogan